# **EXHIBIT A**

Unum
Worcester Benefits Center - Appeals Unit
PO BOX 9548
Portland, ME 04122-5058
Phone: **1-888-226-7959**
Fax: **1-207-575-2354**
www.unum.com



June 1, 2022

JONATHAN FEIGENBAUM
184 HIGH ST
SUITE 503
BOSTON, MA 02110-

RE: Moseley, Susan
Claim Number: 15839110
Policy Number: 27903
Unum Life Insurance Company of America

Unum Life Insurance Company of America completed the appeal review on your client, Susan Moseley's Long Term Disability claim.

Please read the following pages carefully, as they will help you understand how we reached our decision.

This letter includes the following:

- Initial Claim Decision

- The Appeal Decision

- Information that Supports the Appeal Decision

- Policy Provisions that apply to the Appeal Decision

- Next Steps Available

**Initial Claim Decision:**

Your client originally claimed disability beginning May 3, 2018 due to symptoms and cognitive impairment attributed to Lyme disease. Review of your client's medical records did not support cognitive impairment was caused by Lyme disease. The reviews also did not support restrictions or limitations due to Lyme disease, associated symptoms, or any other physical medical conditions.

Reviews supported your client's reported cognitive impairment and related symptoms were due to behavioral health conditions of anxiety and depression. The Long Term Disability claim was approved on April 11, 2019 under the Mental Illness provision which limits benefits to a maximum benefit period of 24 months.

1242-03   UNUM IS A REGISTERED TRADEMARK AND MARKETING BRAND OF UNUM GROUP AND ITS INSURING SUBSIDIARIES.

*Claimant Name: Susan Moseley*   *Claim #:  15839110*
UA-CL-LTD-004033

Claimant Name: Moseley, Susan
Claim Number: 15839110

June 1, 2022
Page 2 of 13

As outlined in the letter dated August 31, 2020, the Benefit Center advised the 24 month Mental Illness limitation was reached on August 1, 2020 and further benefits were not payable due to your client's mental illness conditions. The Benefit Center advised there was no support for restrictions or limitations due to Lyme disease and the claim was closed on August 31, 2020 with benefits paid with a Reservation of Rights through September 1, 2020.

**Appeal Decision:**

We have determined the decision on your client's claim is correct.

In your letter dated December 14, 2020 you indicated that you intended to appeal the decision on your client's Long Term Disability claim. Following receipt of this letter, we wrote to you on several occasions to confirm when you expected to file the appeal, however, you did not respond.

We informed you in the letter dated May 19, 2021 that according to the Department of Labor guidance regarding the COVID-19 national emergency, the appeal is due no later than one year from the original appeal due date or 60 days after the COVID-19 national emergency ends, whichever occurred first.

One year from the original appeal due date was on February 27, 2022 which occurred first and prior to the end of the COVID-19 national emergency; therefore the appeal was due by February 27, 2022.

You did not submit the appeal by the deadline on February 27, 2022. We sent you a letter on February 28, 2022 to advise we began the appeal review. In your letter dated March 4, 2022 you requested we stop the appeal review You advised that you would send materials in support of the appeal to us by no later than the end of March 18, 2022 and that Unum may begin the review on Monday, March 21, 2022.

You also indicated the National Covid Emergency remains in effect which was extended by the President by executive order on February 23, 2022. Although we disagree with your interpretation of the Department of Labor COVID-19 national emergency guidelines, we agreed to provide you with an extension of time to submit additional information in support of the appeal.

You did not submit any additional information, therefore we began the appeal review on March 21, 2022.

In subsequent correspondence from you dated March 25, 2022, you stated your client's physicians and treating psychologist agree that her disabling conditions are caused by Lyme disease. You stated if Unum disagrees, your client is requesting an exam. You also stated if Unum doubts the severity of your client's symptoms or the etiology, you suggested we agree upon a qualified physician or psychologist to perform a truly independent medical examination and vocational evaluation of your client.

As outlined in the letter dated April 20, 2022, we provided you with the additional evidence or rationale we considered, relied upon or generated during the review process before a final decision was made on your client's appeal. We advised before we make a final decision on the disability claim you have a right to review and respond to this new information and/or rationale.

Claimant Name: Moseley, Susan
Claim Number: 15839110

June 1, 2022
Page 3 of 13

In prior correspondence you requested 30 days to respond to any new information provided to you, therefore we advised your response must be received by us no later than May 19, 2022.

In response to your request for an IME, we advised the claim was closed on August 31, 2020 with benefits paid through September 1, 2020. We declined your request for an IME and advised we do not dispute that your client is impaired; rather our reviews support impairment is due to your client's Mental Illness conditions and not Lyme Disease or associated symptoms. It remains our position that a current IME would not assess your client's functional capacity from more than a year and a half ago when she was still receiving benefits and the policy was still in force.

On page one of the letter dated May 18, 2022, you requested an extension of time through May 31, 2022 to provide a response. You stated that your client's physician is very busy.

We wrote to you on May 18, 2022 and advised we already provided you with 30 days to respond and/or provide additional information as you previously requested and we declined your request for another extension of time. We advised if you did not provide a response and/or additional information by May 19, 2022, then we would proceed with completing the appeal review.

Since you did not submit a response and/or additional information by the May 19th deadline, we informed you in the letter dated May 23, 2022 that we were in the process of completing the appeal review. We also advised the 45 day extension of time to complete the appeal review began on May 20, 2022 and would end on July 3, 2022.

You then sent a letter on May 24, 2022 and stated in part the company refused to grant more time for your claimant to submit another response by Dr. Jemsek. You stated Unum decided it may take another 45 days to make a claim determination. You asked us to specify with the U.S. Department of Labor ERISA regulations, the factual basis for Unum taking up to another 45 days to make a determination.

While you intend to submit another response from Dr. Jemsek, we wish to remind you that we have already considered Dr. Jemsek's opinion in our reviews. A reiteration of Dr. Jemsek's prior opinion which we have already considered would not change the appeal decision.

Further, we provided you with a sufficient reason for taking an extension of time in the May 23rd letter. Although you did not submit a response and/or additional information by the deadline on May 19, 2022, we are still entitled to an extension of time to complete the appeal review.

Since you have not provided any additional information, we have finalized and completed the appeal review.

**Information that Supports our Decision:**

On appeal, we completed a full, fair and independent evaluation of your client's claim. The evaluation considered all of the information contained in the claim file including the additional information you submitted on March 25, 2022.

Your client was previously eligible for Long Term Disability benefits due to anxiety and depression which are considered Mental Illnesses under the terms of the policy. Your client

Claimant Name: Moseley, Susan  
Claim Number: 15839110

June 1, 2022  
Page 4 of 13

reached the 24 month limited pay period for disabilities due to Mental Illness and disabilities based primarily on self-reported symptoms on August 1, 2020. Benefits were paid from August 1, 2020 through September 1, 2020 with a Reservation of Rights.

According to the Benefit Center vocational consultant who previously reviewed your client's claim, her occupation as performed in the national economy is a combination of Vice President Business Development eDOT #189.117-919 and Vice President of Sales & Marketing eDOT #189.117-503 and requires the following demands:

**Physical Demands**

- Light work requiring exertion up to 10 lbs. frequently;
- Frequent: sitting, handling, fingering, keyboarding, talking; and
- Occasional: standing, walking, travel.

The Benefit Center vocational consultant added given the frequency of travel commonly performed by executives to attend meetings and conferences both locally and nationally, it is reasonable that this occupation is considered light strength and may require up to frequent weightbearing with a combination of standing / walking at times when traveling.

**Cognitive Demands**

- Sustained concentration, memory, focus, attention (to detail);
- Directing, controlling, or planning activities of others;
- Influencing people in their opinions, attitudes and judgments; making judgments and decisions;
- Dealing with people; performing a variety of duties;
- Complex problem solving with the ability to work effectively under stress and stamina to complete a workday without symptom interruption.

**Definitions of Frequency per The Revised Handbook for Analyzing Jobs:**

- Occasionally: Activity or condition exists up to 1/3 of the time (0 - 2.5 hours a day in an 8-hour workday)
- Frequently: Activity or condition exists from 1/3 to 2/3 of the time (2.5 - 5.5 hours a day in an 8-hour workday)
- Constantly: Activity or condition exists 2/3 or more of the time (5.5+ hours a day in an 8-hour workday)

As part of the appeal review, a physician board certified in family and occupational medicine and a physician board certified in infectious disease reviewed your client's claim.

Your client stopped working in May 2018 due to multiple physical and cognitive symptoms that your client and some of her attending physicians attributed to Lyme disease. Your client reported the onset of symptoms beginning in 2014 which included variable fatigue, dizziness, palpitations, anxiety, intermittent numbness/tingling, light sensitivity and joint pain.

Your client has been evaluated by multiple neurologists, rheumatology, otolaryngology, infectious diseases specialists, Lyme specialists, primary care, vestibular neurology, neuro-ophthalmology, and multiple chiropractors since symptom onset. She has also completed

neuropsychiatric testing and received evaluation and care from psychology, psychiatry and neuropsychiatry.

Your client completed roughly 23 months total of oral and/or intravenous antibiotic treatment between August of 2015 and July of 2017 under the care of infectious diseases specialist Dr. Joseph Jemsek.

She was treated with a 10-day course of doxycycline through a local New Hampshire provider and 2 weeks of minocycline and cefdinir previously prescribed by Dr. Jemsek for a reported tick attachment without submitted exam data or reported erythema migrans rash in July 2019. There is no additional lab data beyond April 2019 and no further antibiotic treatment after July 2019 is documented or described in the records.

The medical and file documentation reviewed does not support a diagnosis of Lyme disease (*Borrelia burgdorferi* infection) or any other infectious etiology. Submitted laboratory values, exam data, and reported symptoms are not consistent with a diagnosis of Lyme disease. No other infectious etiologies are identified on review of the clinical and laboratory data. Additionally, the updated 2022 CDC case definition for Lyme disease is not met.

According to our infectious disease physician, the CDC criteria for a clinical diagnosis of Lyme disease requires one of the following disease manifestations to be reported by a healthcare provider: erythema migrans rash, objective joint swelling, lymphocytic meningitis, cranial neuritis (particularly unilateral or bilateral facial palsy), radiculoneuropathy, encephalomyelitis, or acute onset high-grade atrioventricular conduction defects that resolve within days to weeks.

Although your client has lived in Lyme endemic regions within the United States, participates in outdoor activities such as hiking that would put her at risk for tick exposure, and reports a history of tick attachments predating the onset of symptoms, no erythema migrans rash has been reported by your client or documented on exam.

The July 10, 2015 vestibular neurology evaluation with Dr. Dan Gold, DO specifically documented your client denied any prior history of erythema migrans rash. While arthralgia and myalgia were described, no joint swelling has been reported by your client or documented by examining providers.

Review of systems documentation from the September 30, 2020 primary care visit with Dr. Gregory Curtis specifies the absence of joint pain, joint swelling, joint tenderness and joint stiffness. The exam described your client's musculoskeletal system as within normal limits.

At the annual follow-up exam with Dr. Jemsek (Jemsek Clinic) on September 10, 2021 he noted the absence of arthropathy with no pain on light compression of joints. Your client was described as verbally fluent with a normal response time and "little to no" head and neck "neuro-irritability" was found. Documented shoulder, hip girdle, and bony thorax examinations were also normal.

Although exams from the Jemsek Clinic at times note head/neck "neuro-irritability," ptosis, and nasolabial flattening, no other providers including, neurology or otolaryngology, note these findings or other findings suggestive of facial palsies, meningitis, or cranial neuritis.

Paresthesia described as burning has been reported by your client to multiple providers, but no symptom descriptions or exam findings are suggestive of a radicular pattern.

Claimant Name: Moseley, Susan
Claim Number: 15839110

June 1, 2022
Page 6 of 13

Additionally, there has been no abnormal mental status exams suggestive of encephalomyelitis documented and no MRI findings to suggest encephalitis nor was cervical or thoracic myelitis described on the brain MRI performed on January 8, 2015 or on the cervical and thoracic spine MRIs performed on April 23, 2015.

Cerebrospinal fluid (CSF) testing dated April 7, 2015 demonstrated normal white blood cell count, normal glucose level, and minimal non-specific protein elevation that do not support a diagnosis of lymphocytic meningitis.

Cardiac evaluation including a primary care EKG with Dr. Schneider performed on July 21, 2017 and EKG and 48-hour Holter monitor testing with cardiologist Dr. Jeffrey Kluvin on November 16, 2017 did not demonstrate evidence of conduction defects or brady-arrhythmias. The January 11, 2018 echocardiogram with Dr. Kluvin was also normal.

Additionally, there are no additional tick attachments reported in the record since the Summer of 2019.

Our infectious disease physician explains the 2022 CDC criteria for a laboratory diagnosis of Lyme disease require isolation of *Borrelia burgdorferi* or *Borrelia mayonii* on culture, pathogen detection by nucleic acid amplification testing (NAAT) or immunohistochemical antigen assay (IHA), or two positive serologic tests. Serologic testing may consist of either a combination of positive enzyme linked immunoassay (EIA) or immunofluorescence assay (IFA) for IgM and/or IgG antibodies followed by a positive immunoblot (Western Blot) assay with result patterns according to the established CDC criteria or a second positive or equivocal EIA test.

Although the specific serologic lab values were not submitted for review, the July 10, 2015 vestibular neurology note by Dr. Dan Gold summarizes Lyme testing prior to that visit as negative.

The November 16, 2017 cardiology office visit with Dr. Jeffrey Kuvin documented your client as reporting that she has never had positive Lyme titers.

The lumbar puncture results dated April 7, 2015 demonstrated negative testing for *Borrelia burgdorferi* (Lyme disease) by PCR and IgM/IgG IFA on cerebrospinal fluid (CSF).

Our infectious disease physician notes that early testing (within 30 days of symptoms) or testing after early antibiotic administration can limit the development of Lyme disease antibodies and thus limit the sensitivity of serologic testing as discussed in the record, but there was at least a 6-month timespan from reported onset of symptoms in December 2014 until the negative documented testing in June 2015 as outlined below. The August 12, 2019 pharmacy records do not list any prescriptions for antibiotic agents between a February 4, 2014 clindamycin prescription and the August 28, 2015 fills for trimethoprim-sulfamethoxazole, minocycline, metronidazole and cefdinir from Dr. Jemsek. This would suggest that even if your client had been infected with Lyme disease in the 10 months prior to symptom onset, it is unlikely that her serologic response would have been prevented by antibiotic administration because she did not receive documented antibiotic therapy for the 10 months before or until 8 months after symptom onset; thus the testing results appear reliable.

Additionally, Dr. Jemsek indicates in his letter dated July 26, 2019 that he felt your client demonstrates "the characteristic triad of arthritic, encephalopathic and neuropathic

manifestations" of Lyme disease and specifies in the same letter that the available testing is "87% accurate" in the setting of neurologic Lyme disease and "97% accurate for Lyme arthritis."

Given Dr. Jemsek's reported high sensitivity rates of the available testing in the setting of CNS and Lyme arthritis and provider concern for the presence of these manifestations of Lyme disease, the repeatedly negative test results for Lyme disease are not consistent with a diagnosis of Lyme as Dr. Jemsek indicates and your client has a 97% chance of the testing positive for Lyme disease if it were present given her duration and types of symptoms and the timing of antibiotic administration.

The IGeneX IFA for Lyme IgG and IgM performed on June 15, 2015 is summarized in the July 27, 2015 Jemsek Clinic note by PA Kim Fogarty as negative, indicating no evidence of remote or recent infection with Lyme disease. The Western Blot testing also performed on June 15, 2015 from the same note is also inconsistent with remote or recent Lyme disease infection based on CDC criteria. IgM testing showed no positive bands and was indeterminate for bands 31 and 41. IgG testing was positive for bands 31 and 41 and indeterminate for band 39.

Since your client had been experiencing symptoms for 6 months at the time of testing and had not received antibiotic therapy since February 4, 2014, IgG testing would be expected to reflect Lyme disease if it were present.

Per CDC criteria, 5 out of 10 specific IgG bands must be positive to support a diagnosis of Lyme disease; these criteria are not met as only 2 bands are positive and only one band (41) is on the list of 10 possible bands identified in the CDC IgG criteria.

The medical and file documentation reviewed also does not support the diagnosis of any other infectious diseases.

Although records from the Jemsek Clinic dated July 11, 2016 indicate treatment protocols for co-infection with *Babesia* and *Bartonella* were prescribed during your client's antibiotic regimens between 2015 and 2017, there is no evidence to support a diagnosis of babesiosis or bartonellosis.

Additionally, testing for infection with *Babesia* species by multiple modalities through IGeneX labs on June 15, 2015 was summarized as negative in the July 27, 2015 Jemsek Clinic note by PA Kim Fogarty. Testing for evidence of *Bartonella* infection on July 2, 2015 though Galaxy Labs summarized in the same July 27, 2015 Jemsek Clinic by PA Fogarty was also negative.

The vestibular neurology note dated July 10, 2015 by Dr. Gold notes negative rapid plasma reagin (RPR) testing indicating the absence of syphilis.

The April 7, 2015 CSF culture for other bacterial pathogens was finalized as no growth (negative) and the CSF Gram stain, cell counts, and glucose testing did not demonstrate evidence of abnormalities found in fungal, bacterial, or viral meningitis. Mildly elevated CSF protein in the absence of other abnormal values is non-specific. Testing for Hepatitis C infection or exposure on April 5, 2019 was also negative. Further, there has been no new laboratory data submitted after April 5, 2019.

Claimant Name: Moseley, Susan  
Claim Number: 15839110

June 1, 2022  
Page 8 of 13

The medical and file documentation reviewed also does not support impairment due to any non-behavioral health organic medical conditions.

Contemporaneous examinations do not identify impairing neurological, musculoskeletal, or other physical deficits. Additionally, records do not describe impairing mononeuropathies, cardiac conduction defects, arthropathy or other evidence of physical impairment associated with post-treatment Lyme disease or other organic medical conditions.

The examination performed by Dr. Curtis (PCP) on September 30, 2020 was unremarkable without neurological or musculoskeletal deficits. Records also do not describe cognitive deficits resulting from any non-behavioral health organic medical conditions.

Testing does not support the presence of an underlying autoimmune disease nor does it support the diagnosis of Multiple Sclerosis (MS) or other demyelinating disease.

Diagnostic cardiac evaluation also did not identify any impairing cardiac disease.

Neuropsychological testing performed in July 2018 identified largely average/normal performance with variability in testing performance. The neuropsychological findings do not support cognitive impairment due to any non-behavioral health organic medical conditions.

Contemporaneous treatment for your client's reported somatic symptoms have remained conservative and of low intensity. The mainstay of contemporaneous treatment was focused on your client's mental illnesses of anxiety and depression in which your client was engaged in ongoing treatment with psychotherapy and psychotropic medications.

Your client's reported activities are also inconsistent with impairment from a physical perspective. Specifically, your client reported to Dr. Levine in October 2020 that she went hiking with a small group to view foliage and also participated in a long meeting with her condo board. In November 2020, your client reported to Dr. Levine that she was walking frequently, resumed yoga, in addition to cooking and reading a lot.

Your client also reported on the claim form dated September 3, 2021 that her daily activities include some household chores, reading, computer use, and "exercising of varying amount."

Your client reported to Dr. Jemsek on September 10, 2021 that she was happy in in her re-located home and she does some gardening and enjoys hikes. Your client reported some limitations in energy but the physical examination documented your client in no distress, with unremarkable neurological/musculoskeletal findings and no arthropathy. Further, Dr. Jemsek documented your client was doing "extraordinarily well" except for "less than optimal, but improving, stamina."

Although your client has reported persistent limiting physical and cognitive symptoms, her reported activities (exercising, yoga, hiking, kayaking, skiing, traveling, renovating a property, moving, serving on a condo board) are not consistent with impairment due to a non-behavioral health condition.

There is also no support for impairment related to adverse medication effects and/or side effects. Examinations did not describe somnolence, sedation, psychomotor agitation/retardation, or other functional deficits related to medication side effects.

*Claimant Name: Susan Moseley*     *Claim #: 15839110*

UA-CL-LTD-004040

Claimant Name: Moseley, Susan  
Claim Number: 15839110

June 1, 2022  
Page 9 of 13

Additional co-morbid conditions include hyperlipidemia. Records reflect this condition has remained treated/stable and this condition is not impairing.

**Conclusion**

We have concluded the medical and file documentation reviewed does not support a diagnosis of Lyme disease or any other infectious etiology nor does it support impairment when considered individually or in aggregate due to any non-behavioral health organic medical conditions. Based on this, your client is not precluded from performing the demands of her occupation and she is not eligible for disability benefits under the policy beyond September 1, 2020.

As outlined above, the 24 month limited pay period for Mental Illness was reached on August 1, 2020 and no further benefits are payable resulting from your client's Mental Illness conditions of anxiety and depression.

Your client is receiving Social Security Disability benefits and it was important for us to understand what information the Social Security Administration used to make its decision. We received and reviewed a copy of their Social Security Disability claim file, including medical, vocational and financial information in addition to the ALJ approval letter dated October 22, 2019. According to the ALJ, your client was noted to have severe impairments of Lyme borreliosis, depression and anxiety. The ALJ did not find the impairments of depression or anxiety met medically equal listing 12.04 (Depressive, bipolar and related disorders) or listing 12.06 (anxiety and obsessive-compulsive disorders). The ALJ determined the severity of your client's impairment due to Lyme Disease met the criteria of 20 CFR 404.1520(d) and 404.1525.

We have determined your client is not eligible for Long Term Disability benefits beyond September 1, 2020 and our decision differs from the Social Security Administration determination for the following reasons:

- The supported restrictions and limitations causing impairment is the result of your client's conditions of anxiety and depression and related symptoms which are considered Mental Illnesses. The policy contains a 24 month limited pay period for disability due to Mental Illness and your client received the maximum amount of benefits payable under the policy for Mental Illness. The benefits your client receives from Social Security does not contain this limitation.
- Our reviews do not support a diagnosis of Lyme Disease (*Borrelia burgdorferi* infection) or any other infectious etiology and the medical and file documentation contains compelling evidence to support our position. Specifically, submitted laboratory values, exam data, and reported symptoms are not consistent with a diagnosis of Lyme disease and the updated 2022 CDC case definition for Lyme disease is not met. There are also no other infectious etiologies identified on review of the clinical and laboratory data.

You have submitted multiple letters to the company since the start of the appeal review demanding the company pay Total Disability to your client retroactive to the date of termination, pay New Hampshire statutory interest for all overdue benefits and pay attorneys' fees to reimburse for legal fees incurred to date.

Your client is not eligible for Long Term Disability benefits beyond September 1, 2020 and we have provided you with a detailed explanation to support our position. The company has completed a full, fair and thorough appeal review and considered all of the information

contained in the claim file. The file clearly reflects the claim has been handled in good faith and in accordance with the provisions of the policy. We are confident that the company's handing of your client's claim has been in accordance with the facts, the applicable policy language and its obligations to your client.

**Policy Provisions that Apply to the Appeal Decision:**

We relied upon your client's policy when making our decision, including the provisions listed below, and the Company reserves its right to enforce other provisions of the policy.

**"WHEN DOES YOUR COVERAGE END?**

Your coverage under the policy or a plan ends on the earliest of:

- the date the policy or a plan is cancelled;
- the date you no longer are in an eligible group;
- the date your eligible group is no longer covered;
- the last day of the period for which you made any required contributions; or
- the last day you are in active employment except as provided under the covered leave of absence provision.

Unum will provide coverage for a payable claim which occurs while you are covered under the policy or plan."

***"WHAT DISABILITIES HAVE A LIMITED PAY PERIOD UNDER YOUR PLAN?***

Disabilities, due to a sickness or injury, which are primarily based on self-reported symptoms, and disabilities due to mental illness, alcoholism or drug abuse have a limited pay period up to 24 months.

Unum will continue to send you payments beyond the 24 month period if you meet one or both of these conditions:

1. If you are confined to a hospital or institution at the end of the 24 month period, Unum will continue to send you payments during your confinement.

    If you are still disabled when you are discharged, Unum will send you payments for a recovery period of up to 90 days.

    If you become reconfined at any time during the recovery period and remain confined for at least 14 days in a row, Unum will send payments during that additional confinement and for one additional recovery period up to 90 more days.

2. In addition to Item 1, if, after the 24 month period for which you have received payments, you continue to be disabled and subsequently become confined to a hospital or institution for at least 14 days in a row, Unum will send payments during the length of the reconfinement.

Unum will not pay beyond the limited pay period as indicated above, or the maximum period of payment, whichever occurs first.

Claimant Name: Moseley, Susan  
Claim Number: 15839110

June 1, 2022  
Page 11 of 13

Unum will not apply the mental illness limitation to dementia if it is a result of:

- stroke;
- trauma;
- viral infection;
- Alzheimer's disease; or
- other conditions not listed which are not usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment."

"**SELF-REPORTED SYMPTOMS** means the manifestations of your condition which you tell your physician that are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to headaches, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy."

"**MENTAL ILLNESS** means a psychiatric or psychological condition regardless of cause such as schizophrenia, depression, manic depressive or bipolar illness, anxiety, personality disorders and/or adjustment disorders or other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment."

"**HOSPITAL OR INSTITUTION** means an accredited facility licensed to provide care and treatment for the condition causing your disability."

"**HOW DOES UNUM DEFINE DISABILITY?**

You are disabled when Unum determines that:

- you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
- you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.

After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

The loss of a professional or occupational license or certification does not, in itself, constitute disability."

We may require you to be examined by a physician, other medical practitioner and/or vocational expert of our choice. Unum will pay for this examination. We can require an examination as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Unum Representative."

"**Material and substantial duties** means duties that:

- are normally required for the performance of your regular occupation; and
- cannot be reasonably omitted or modified."

*Claimant Name: Susan Moseley       Claim #: 15839110*

UA-CL-LTD-004043

"**Regular occupation** means the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location."

Your client's policy provides a time limit to file a legal action:

**"WHAT ARE THE TIME LIMITS FOR LEGAL PROCEEDINGS?**

You can start legal action regarding your claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided under federal law."

The contractual limitation provided above will expire on August 31, 2023, which is 3 years from the Benefit Center's decision letter of August 31, 2020.

**Next Steps Available:**

You are entitled to receive, upon request and without charge, reasonable access to or copies of all documents, records or other information that are relevant to your client's benefit determination.

If your client disagrees with this decision, you have a right to bring a civil suit under section 502 (a) of the Employee Retirement Income Security Act of 1974.

Your client or their plan may have other voluntary alternative dispute resolution options, such as mediation. You can learn what options are available to you by contacting your client's U.S. Department of Labor office and state insurance regulatory agency.

**To All New Hampshire Residents**

We will, of course, be available to you to discuss the position we have taken and answer your questions. You may reach us by calling the customer service number located in this letter.

If you have been unable to resolve your concern and are a resident of New Hampshire or have a New Hampshire issued policy, you may take this matter up with the New Hampshire Insurance Department, as it maintains a service division to investigate complaints at 21 South Fruit Street, Suite 14, Concord, NH 03301. The New Hampshire Insurance Department can be reached, toll-free, by dialing 1-800-852-3416.

Unum Life Insurance Company of America has completed our review of your client's appeal. No further review is available, and the appeal is now closed.

If you have questions about your client's claim or this process, please call our Contact Center at 1-888-226-7959, 8 a.m. to 8 p.m. Eastern Time, Monday through Friday. Any of our experienced representatives have access to your claim documentation and will be able to assist you.

If you prefer to speak with me personally, I can be reached at the same toll-free number at extension, 77377.

Claimant Name: Moseley, Susan
Claim Number: 15839110

June 1, 2022
Page 13 of 13

| Spanish: To obtain assistance in Spanish, call 1-800-858-6843. | Para obtener asistencia en Español, llame al 1-800-858-6843. |
| --- | --- |
| Chinese: To obtain assistance in Chinese, call 1-800-858-6843. | （中文）：如果需要中文的帮助，请拨打这个号码：1-800-858-6843. |
| Tagalog: To obtain assistance in Tagalog, call 1-800-858-6843. | Kung kailangan ninyo ng tulong sa Tagalog, tumawag sa 1-800-858-6843. |
| Navajo: To obtain assistance in Dine, call 1-800-858-6843. | Dinek'ehgo shika at'ohwol ninisingo, kwiijigo holne` 1-800-858-6843. |

Sincerely,

*Shannon L Cartier*

Shannon L Cartier
Lead Appeals Specialist