# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SUSAN J. MOSELEY,<br><br>    Plaintiff<br><br>V.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA and UNUM GROUP,<br><br><br>    Defendants | CIVIL ACTION NO. 22-cv-40079-RGS<br><br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC NO. 9)** |

**I.     Unum Failed to Meet Its Burden to Prove That Ms. Moseley's Occupational Impairment is "Due to Mental Illness" Rather than Lyme Disease.**

Debilitating symptoms caused by Lyme disease ended Ms. Moseley's career as a vice president of the National Apartment Association. (AR0154-55; 0157[1]). Coe Garon, an Unum Group employee administered Ms. Moseley's claims under the two individual policies ("IDI policies") and Ms. Moseley's claim under her employer's long-term disability plan ("LTD Plan"). (AR0262). About 11 months after Ms. Moseley first applied for benefits, in April 2019, defendants Unum Life Insurance Company of America's and Unum Group's ("Unum" collectively) approved her claim under the LTD Plan and under the IDI policies. (AR1723; AR1599). Ms. Moseley received LTD Plan benefits for 24 months. (AR3710). She continues to receive benefits under the IDI policies.

---

[1] (ARXXXX) refers to page identified by Bates Stamps UA-CL-LTD-XXXXX at Volume II - Volume X of the administrative record.  The 4064+ page, "Administrative Record is replete with duplicates, triplicates, and worse…The court should not have to waste time ferreting out the relevant pieces from a jumbled mess of documents to resolve the case. *Doe v. Unum Life Ins. Co. of Am.*, 35 F. Supp. 3d 182, 185 n.3 (D. Mass. 2014). Unum continues to provide an administrative record that is the same mess as when the Court made this remark eight years ago.

On August 31, 2020, Unum terminated her claim under the Mental Illness Limitation ("MIL") in the LTD Plan. It argued that Ms. Moseley's disability was not caused by symptoms of Lyme disease but due to mental illness. (AR3711). In the final adverse-benefit determination in June 1, 2022, Unum wrote, "The medical and file documentation review also does not support impairment due to any non-behavioral organic medical conditions." (AR4040).  The LTD Plan does not require Ms. Moseley to prove that she had an "organic medical condition" to avoid imposition of the 24 month MIL. Yet this is the ground on which Unum terminated her claim. This June 1, 2022 letter is "[t]he decision to which judicial review is addressed is the final ERISA administrative decision." *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 519 (1st Cir. 2005).

Unlike most ERISA long-term disability litigation, Ms. Moseley's disability is not disputed. Unum agrees:

> We do not dispute that your client is impaired; rather our review support impairment is due to your client's mental illness conditions and not Lyme disease or associated symptoms. (AR4011-12).

Unum bears the burden to prove that Ms. Moseley is disabled only "due to mental illness" on a "but-for" causation basis. *See Kamerer v. Unum Life Ins. Co. of Am.*, 334 F. Supp. 3d 411, 428 (D. Mass. 2018) (holding Unum bears the burden of proof on the 24 month "mental illness" limitation). Unum abused its discretion when it terminated benefits. The Court should reinstate benefits retroactively to September 1, 2020.

**A.  Summary of reasons why Unum's decision was an abuse of discretion.**

In 2004, Maine, Massachusetts, and Tennessee insurance regulators, acting on behalf of most other states, conducted a coordinated investigation of Unum, resulting in a Regulatory Settlement Agreement ("RSA"). As a result Unum agreed with 50 state regulators and the US Department of Labor "to reform their long-term disability claims processing practices and

reevaluate hundreds of thousands of previously denied claims." *McKinnon v. Unum Grp.*, 516 F. Supp. 3d 49, 58 n. 4 (D. Mass. 2021).

When adjudicating Ms. Moseley's claim, Unum did not act reasonably and abused its discretion in terminating her benefits. Examining procedural unreasonableness is the appropriate measure for a trial court tasked to determine whether an ERISA fiduciary exercising discretion abused it. *See Lavery v. Restoration Hardware Long Term Disability Benefits Plan*, 937 F.3d 71, 78-79 (1st Cir. 2019) (recounting the importance of "procedural unreasonableness" discussed by the Supreme Court in *Metro. Life Ins. Co. v. Glenn* for deciding whether an ERISA fiduciary abused its discretion). Here, Unum committed six material procedural violations that deprived Ms. Moseley of full and fair review under ERISA. 29 U.S.C. § 1133.

## 1. Only non-examining doctors employed by Unum concluded that Ms. Moseley was disabled due to "behavioral health" conditions.

Only non-examining doctors employed by Unum contended that Ms. Moseley's occupational impairment is "due to mental illness." (AR4033-34). The credible evidence is that her impairments are due to Lyme disease. Ms. Moseley's attending physician, Joseph Jemsek, M.D., a Lyme disease and other tick-borne illnesses specialist—board certified in infectious diseases—determined since July 2015 that Ms. Moseley's symptoms were due to Lyme disease. (AR0370-71; AR665-94). Unum rejected Dr. Jemsek's determination mostly because laboratory tests did not confirm the presence of Lyme antibodies and other lab based data. *See* Doc No. 9, Unum Mem. pp 9-15. This shows a bias or misunderstanding for diagnosing Lyme disease as explained below in part six and is not excusable on grounds of divergent opinions by doctors.

Unum failed to defer to Dr. Jemsek's determination under Unum's claim manual and the RSA. *See Dwyer v. Unum Life Ins. Co. of Am.*, 548 F.Supp.3d 468, 472 (E.D. Pa. July 8, 2021)

(discussing how Unum agreed to give "significant weight" to the opinion of a treating physician under a regulatory settlement agreement.  Part of the manual and the RSA requires Unum "giving significant weight to an attending physician's ('AP') opinion, if the AP is properly licensed and the claimed medical condition falls within the AP's customary area of practice." Unum may only reject the "AP's opinion" when "the claim file…include[s] specific reasons why the opinion is not well supported by medically acceptable clinical or diagnostic standards **and** is inconsistent with other substantial evidence in the record." *Dwyer* at 473. (AR0396-97). Under the RSA Unum agreed to provide greater protection to ERISA plan participants than had been previously required under ERISA common law, now memorialized as the two-prong test in the RSA.

 Dr. Jemsek is a tick-borne illness specialist. His practice is limited to this area. Unum cannot reasonably argue he is outside his area of expertise. Unum failed to point to other evidence in the record that was inconsistent. Unum did not and could not. Therefore, Unum had to give Dr. Jemsek's determination substantial weight. While treating physicians are not due special deference in the ERISA context, Ms. Moseley's reliable evidence of her Lyme disease must still be credited. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825, 834 (2003). And despite the *Nord* decision, Unum agreed to defer to treating physician opinions under the RSA as that is "reflected in the claims manual." *Dwyer*, 548 F.Supp.3d at 472.

Also, the RSA provides that when a claimant is afflicted by multiple medical conditions, Unum "personnel will ensure that all diagnoses and impairments are considered and afforded appropriate weight in developing a coherent view of the claimant's medical condition, capacity and restrictions/ limitations." *Id.* at 473. Unum failed to review this nature with an open mind. Without an in-person exam by a psychiatrist or psychologist, Unum had no credible basis not to

give "significant weight" to Dr. Jemsek's determination. "The impressions of examining doctors sensibly may be given more weight than those who looked only at paper records." *Gross v. Sun Life Assurance Co. of Canada*, 880 F.3d 1, 14 (1st Cir. 2018). On point, the Sixth Circuit held that under an abuse of discretion analysis, the insurer's "failure to consult with a mental health expert" when the insurer denied benefits "on the basis that her disability included a psychiatric component—indicates a lack of deliberate and reasoned decision-making." *Okuno v. Reliance Standard Life Ins. Co.*, 836 F.3d 600, 611 (6th Cir. 2016).

**Unum offered Ms. Moseley an opportunity to undergo an Independent Medical Exam under the RSA and then breached its promise when Ms. Moseley requested an IME.**

In a letter dated February 27, 2019, Unum offered Ms. Moseley the right to undergo an independent medical exam. (AR1486).

**Independent Medical Review**

Our evaluation of your medical restrictions and limitations includes a review of your medical records. As we perform our review of your claim, it is your right, or the right of your attending physician, either directly or through your representative, to request an "independent medical examination" (IME) should opinions differ on the degree of medical impairment. Any such request will be evaluated under our IME protocol and guidelines including consideration of whether our decision is related to your medical condition. We will consider your request in a timely manner and provide you with our response in writing.

Under the October 3, 2005 Amendment to the RSA had to offer Ms. Moseley the opportunity to undergo an IME "unless the decision is made to continue to pay the claim." (AR0396).

4. Exhibit 6 of the RSA is amended to add Section D to read as follows:

"As part of advising a claimant how to submit a claim or early in the process of reviewing an open claim and, in any event, prior to any decision being made to deny a recently submitted claim or to close an open claim, claimants shall be informed in writing that it is their right or the right of their attending physician (either directly or through the claimant's representative) to request an IME of their medical condition, unless the decision is made to pay or continue to pay the claim."

Ms. Moseley requested an IME. (AR3828). Unum broke its promise and violated the RSA by refusing her request. On April 20, 2022, Unum wrote, "It is our position a current IME would not assess your client's functional capacity from more than a year and a half ago when she

was still receiving benefits…." (AR4012). Given that Unum never contested Ms. Moseley's functional capacity, only the etiology of her restrictions and limitations, this statement shows again that Unum acted procedurally unfair.

2. **An Administrative Law Judge found Ms. Moseley occupationally impaired due to Lyme disease and not psychiatric causes.**

An Administrative Law Judge ("ALJ") determined that Ms. Moseley's occupational disability was due to Lyme disease and not anxiety or depression. (AR2586-2592).  Unum admitted that the ALJ "did not find the impairments of depression or anxiety met the medically equal listing 12.04…or listing 12.06 (anxiety and obsessive-compulsive disorders. The ALJ determine the severity of your client's impairment due to Lyme Disease…" (AR4041). The ALJ concluded when evaluating a non-examining psychologist's opinion, **"I find these limitations result from the claimant's Lyme disease and not from her psychological conditions."** (AR2591).

Under the RSA, Unum agreed to give significant weight to the determination of the Social Security Administration. *Dwyer*, at 473. Again, Unum violated the RSA by not giving significant weight to the ALJ's determination, and Unum failed to offer a plausible rationale to depart from the ALJ's determination. Also, Unum violated the Department of Labor regulation which required it to discuss why it disagreed with the SSA's finding of disability. 29 C.F.R. § 2560.503-1(j)(6)(C). Unum never provided its reasons other than to say that lab results did not support a diagnosis of Lyme disease. (AR4041).

The ALJ opinion deserves substantial weight. The ALJ is the only neutral who examined the entire medical record and took testimony. The ALJ was not motivated to find that Ms. Moseley was disabled by Lyme disease versus anxiety or depression. After weighing detailed

evidence, the ALJ concluded that Ms. Moseley was disabled due to Lyme Disease and not

mental illness. (AR2586-2592).  Part of the ALJ opinion is below:

> I find that the severity of the claimant's impairment meets listing 14.09D. Listing 14.09D requires repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs, such as severe fatigue, fever, malaise, or involuntary weight loss, and one of the following at the marked level: (i) limitation of activities of daily living; (ii) limitation in maintaining social functioning; or (iii) limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

> The claimant's treating infectious disease specialist, Joseph Jemsek, M.D., noted that the claimant is "substantially" impaired in multiple areas of functioning, including stamina and endurance, cognitive processing, and stress and activity tolerances (Ex. 6F/2; 16F/1; 28F/1). Dr. Jemsek noted that there is only one FDA approved test for Lyme disease and that while it is good at detecting the disease at later stages, it is less reliable at earlier stages when antibodies are low (Ex. 628F/2). He noted that the claimant has had abnormal laboratory testing showing various nutritional, endocrine, immunologic, and anemic issues (Ex. 6F/2; 28F/1). He also noted that her exhaustion can be debilitating for even simple or routine tasks (Ex. 16F/1).

> The claimant's treatment records consistently show that she has repeated manifestations of joint pain, including "extreme" pain in her cervical spine, bilateral knee pain, and lower back pain, and also show that she experiences chronic fatigue and malaise (Ex. 3F/10; 4F/1-2; 9F/5-8; 10F/1; 20F/1-2; 34F/5). Dr. Jemsek's records indicate that she "clearly" has episodic myalgias

> and arthralgias and he noted in July 2019 that the claimant's condition is treatment-persistent and includes a triad of arthritic, encephalopathic, and neuropathic manifestations (Ex. 2F/6; 28F/1).

> She also experiences brain fog, memory problems, and slowed cognitive processing and response speeds (Ex. 4F/1; 5F/4; 21F/1; 22F/10; 24F/3). July 2018 cognitive testing found a "significant" cognitive impairment (Ex. 24F/8). I note that the testing had to be split into two sessions because of fatigue (Ex. 24F/4). An MRI of her brain in the record shows old lacunar infarcts involving the frontal lobe and cerebellar hemisphere (Ex. 29F/1). Vicki Anderson, Psy.D., the claimant's treating psychiatrist, and Melinda Warner, Ed.D., the claimant's psychotherapist, both noted that the claimant experiences depressed moods, sleep disturbances, difficulties concentrating and distractibility, decreased energy, and preoccupation with intrusive, unwanted thoughts (Ex. 32F/2; 33F/2, 11). This evidence is also consistent with a finding that the claimant has marked limitations in her activities of daily living and in her ability to complete tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

> I have also evaluated the claimant's testimony and subjective complaints contained in the documentary evidence in accordance with 20 CFR 404.1529 and SSR 16-3p and has determined the claimant's statements concerning her medically determinable impairments and their impact on her ability to perform work activities are consistent with the objective medical and other evidence including her limited activities of daily living and her medical history. Her allegations are also consistent with her medications and their reported side effects, her consistent work and earnings history that demonstrates a motivation to work, and the other evidence in the record. These factors support the intensity, persistence and limiting effects of the claimant's symptoms.

\*\*\*

Dr. Jemsek opined in July 2018 that the claimant could not perform her past work, could not sustain even basic predictable attendance based on her symptoms, and could not produce acceptable work based on her fatigue and cognitive issues (Ex. 6F/2; 16F/1). He then opined in August 2018 that the claimant could frequently sit, occasionally stand and walk, never climb or operate heavy machinery, occasionally twist, bend, stoop, and reach above shoulder level, occasionally lift up to twenty pounds, and occasionally perform fine finger activities, perform coordinated hand eye movements, and push and pull bilaterally (Ex. 17F/2).

In August 2019, Dr. Jemsek submitted another opinion, opining that the claimant's symptoms would frequently interfere with her attention and concentration and that she would be incapable of even low stress jobs (Ex. 36F/2). He opined further that she could sit for about four hours total in an eight-hour workday, stand and walk for less than two hours total in an eight-hour workday, would require the able to alternate between sitting, standing, and walking at will, would require unpredictable, unscheduled work breaks, could occasionally lift less than ten pounds, rarely climb stairs, and would be absent from work about four days per month (Ex. 36F/3-5). Dr. Jemsek supports his opinions by consistently noting that the claimant has physical and mental

fatigue and exhaustion, decreased stress tolerance, and cognitive dysfunction (Ex. 6F/216F/1; 17F/2, 4; 36F/1).

Dr. Jemsek's opinions are persuasive because they are well-supported and consistent with the longitudinal evidence of record, including Dr. Jemsek's own records, consistently showing episodic pain in her neck, back, and knees, chronic fatigue and malaise, brain fog, memory problems, slowed cognitive processing and response speeds, depressed moods, sleep disturbances and preoccupied thoughts, and difficulties concentrating and distractibility (Ex. 3F/10; 4F/1-2; 5F/4; 9F/5-8; 10F/1; 20F/1-2; 21F/1; 22F/10; 24F/3; 32F/2; 33F/2, 11; 34F/5). I find that this evidence is consistent with a finding that the claimant's symptoms are of listing level severity. Therefore, Dr. Jemsek's opinions are persuasive.

Treating psychiatrist Vicki Anderson, Psy.D., opined that the claimant has marked limitations in understanding, remembering, or applying information, moderate limitations in interacting with others, marked limitations in concentrating, persisting, and maintaining pace, and moderate limitations in adapting and managing herself (Ex. 32F/3). Dr. Anderson also opined that the claimant would be absent more than four days per month (Ex. 32F/5). She supports her opinion by noting that the claimant experiences depressed moods, sleep disturbances, difficulties concentrating and distractibility, decreased energy, and preoccupation with intrusive, unwanted thoughts (Ex. 32F/2).

Treating psychotherapist Melinda Warner, Ed.D., opined that the claimant has marked limitations in understanding, remembering, or applying information, moderate limitations in interacting with others, marked limitations in concentrating, persisting, and maintaining pace, and moderate limitations in adapting and managing herself (Ex. 33F/3; 35F/3). Dr. Warner also opined that the claimant would be absent more than four days per month and would have "extreme" limitations in maintaining attention, dealing with normal work stress, dealing with the stresses of skilled and semi-skilled work (Ex. 33F/4-5; 35F/4-5). She also supports her opinion by noting that the claimant experiences depressed moods, sleep disturbances, difficulties concentrating and distractibility, decreased energy, and preoccupation with intrusive, unwanted thoughts (Ex. 33F/2; 35F/2).

The opinions of Drs. Anderson and Warner are also persuasive because they, too, are well-supported and consistent with the evidence of record consistently showing brain fog, memory problems, and slowed cognitive processing and response speeds, as well as their own records indicating that the claimant experiences depressed moods, sleep disturbances a preoccupation with intrusive, unwanted thoughts, difficulties concentrating and distractibility, and decreased energy (Ex. 4F/1; 5F/4; 21F/1; 22F/10; 24F/3; 32F/2; 33F/2, 11). I therefore find that their opinions also support a finding that the claimant's symptoms are of listing level severity.

\*\*\*

Non-examining State psychological consultant Lisa Fitzpatrick, Psy.D., opined in October 2018 that the claimant had mild limitations in understanding, remembering, or applying information, mild limitations in interacting with others, mild limitations in concentrating, persisting, and maintaining pace, and moderate limitations in adapting and managing herself (Ex. 1A/7). She opined further that the claimant could tolerate simple changes in routine, avoid hazards, travel independently, and make and carry out simple plans (Ex. 1A/10). She supported her opinion by citing to the claimant's July 2018 neuropsychological evaluation findings generally average or better scores across the areas of functioning (Ex. 1A/7). Her opinion is persuasive to the extent that it is consistent with the results of that neuropsychological evaluation and though the evidence shows that the claimant experiences brain fog, memory problems, and slowed cognitive processing and response speeds, I find that these limitations result from the claimant's Lyme disease and not from her psychological conditions (Ex. 4F/1; 5F/4; 21F/1; 22F/10; 24F/3-4, 8). Accordingly, Dr. Fitzpatrick's opinion is generally persuasive with respect to the claimant's psychological functioning.

*First*, Unum had an obligation to explain why it rejected the ALJ's conclusions. "The reasoning of the Social Security Administration's determination cannot simply be ignored" particularly when the ERISA plan demands that the participant apply for benefits. *Petrone v. Long Term Disability Income Plan for Choices Eligible Emps. of Johnson & Johnson & Affiliated Companies*, 935 F. Supp. 2d 278, 295 (D. Mass. 2013). As explained above, Unum

agreed to give significant weight to the determination of the Social Security Administration. *Dwyer*, at 473. *Second*, The Department of Labor regulations required Unum to discuss why it disagreed with the SSA's finding of disability. 29 C.F.R. § 2560.503-1(j)(6)(C). Unum's final adverse-benefit determination letter did not explain why the ALJ was wrong, other than to say laboratory results did not support a diagnosis of Lyme disease. (AR4041). Unum did not address other parts of the ALJ's opinion, finding many physical ailments prevented Ms. Moseley from working. Unum failed to engage with this evidence. These included documented "episodic pain in her neck, back and knee, chronic fatigue and malaise, brain fog, memory problems, slowed cognitive processing and response speeds" and sleep disturbances" and more. (AR2590).

### 3. Unum failed to review Ms. Moseley's multiple medical conditions by physicians with appropriate training and experience.

Unum breached the Department of Labor ERISA claims regulations. Under ERISA, a reviewing physician must have "appropriate training and experience in the field of medicine involved in the medical judgment." 29 C.F.R. § 2560.503-1(h)(3)(iii).  Unum should have had Ms. Moseley examined by a psychologist or psychiatrist. The final adverse-benefit determination makes no mention of a review by a mental health professional. (AR4033-4045). Failing to consult a psychiatrist or psychologist "indicates a lack of deliberate and reasoned decision-making." in this circumstance. *Okuno v. Reliance Standard Life Ins. Co.*, 836 F.3d 600, 611 (6th Cir. 2016). Merely, because earlier in the claims adjudication, Unum turned to psychologists on its staff did not excuse Unum from securing an opinion after Ms. Moseley appealed.

On June 1, 2022, Unum wrote, "As part of the appeal review, a physician board certified in family and occupational medicine and a physician board certified in infectious diseases reviewed your client's claim." (AR4036). Unum's claim file discloses Scott B. Norris, M.D is

the family and occupational medicine doctor. (AR4002). Many courts have criticized Dr.

Norris's opinions as biased and unreliable [2]. Unum has been warned about Dr. Norris'

shortcomings under 29 C.F.R. § 2560.503-1(h)(3)(iii) when it failed to explain how Dr. Norris

---

[2] *See e.g., Carney v. Unum Life Ins. Co. of Am.,* 596 F. Supp. 3d 845, 856 (E.D. Mich. 2022)
("[A]t least some of Dr. Norris' conclusions are not borne out by the objective evidence present
in the administrative record," also noting that Dr. Norris did not examine plaintiff "despite the
fact that [the plaintiff's] complaints (pain and its ensuing effects) are highly subjective in nature
and amenable to more effective evaluation and understanding when personal communication and
observation is possible."); *Chicco v. First Unum Life Ins. Co.,* 2022 WL 621985, at *5 (S.D.N.Y.
Mar. 3, 2022) (finding that Dr. Norris did not refute the conclusions of Chicco's treating
physicians, and he improperly "discounted as not time-relevant physical findings from
examinations performed after [the plaintiff] stopped working.") *Boykin v Unum Life Ins. Co. of
Am.*, 2022 U.S. Dist. LEXIS 27455, at *46 (E.D. Cal. Feb. 15, 2022) ("Dr. Norris' evaluation is
entitled to little weight."); *Dwyer v. Unum Life Ins. Co. of Am.*, 548 F. Supp. 3d 468, 483-84
(E.D. Pa 2021) (although Dr. Norris testified that he did not doubt the plaintiff's symptoms or
the veracity of her treating physician, his report inconsistently discredited the plaintiff's reports
of unpredictable and incapacitating symptoms); *Boersma v. Unum Life Ins. Co. of Am.*, 546 F.
Supp. 3d 703, 710 (M.D. Tenn. 2021) (rejecting Dr. Norris' opinion as conclusory); *Rios v
Unum*, 2020 WL 7311343 (C.D. Cal., 2020) (criticizing Dr. Norris as not being an expert in the
field and for failing to personally examine the Plaintiff); *Barnes v. Unum Life Ins. Co. of Am.*,
2020 WL 10221073, at *9 (E.D. Tenn. Nov. 24, 2020) (court criticized Dr. Norris for
unreasonably arguing a functional capacity evaluation result was "inconsistent with examination
findings and observations during clinical evaluations w[ith] treating physicians" which was not
correct); *Brown v. UNUM Life Ins. Co. of Am.*, 356 F. Supp. 3d 949, 961 (C.D. Cal. 2019)
(criticizing the faulty foundation for Dr. Norris' opinion); *Christoff v. Unum Life Ins. Co. of Am.*,
2019 WL 4757884, at *5 (Dr. Norris "ignored information" and "Dr. Norris reache[d]
conclusions contradicting those of several of the medical professionals who had previously
examined and treated [the plaintiff]."); *Clark v. Unum Life Ins. Co. of Am.*, 2018 WL 4931935,
*15 (M.D. Tenn. Oct. 10, 2018), (criticizing Dr. Norris for his "conclusory findings" and
"selective review" of the evidence); *Dewsnup v. Unum Life Ins. Co. of Am.*, 2018 WL 6478886,
at *10 (D. Utah Dec. 10, 2018) ("[T]he court gives greater weight to the opinions of his treating
physicians, who were better able to assess the veracity of Mr. Dewsnup's reports of pain. . . .
[Dr. Norris] would have been well-served to meet with Mr. Dewsnup in person or request an
independent medical examination."); *Fleming v. Unum Life Ins. Co. of Am.*, 2018 WL 6133859,
at *10 (C.D. Cal. Nov. 20, 2018) (criticizing Unum for failing to explain why Dr. Norris was
qualified to give an opinion on pain management and thus discounting his opinion); *Hannon v.
Unum Life Ins. Co. of Am.*, 988 F. Supp. 2d 981, 985-86, 992 (S.D. Ind. 2013) (rejecting Dr.
Norris' opinion as "nothing short of arbitrary"); *Tam v. First Unum Life Ins. Co.*, 491 F. Supp 3d
698, 707, 711 n.11 (C.D. Cal. 2020) ("Dr. Norris dismissed the CPET Report and
Neuropsychological Evaluation as 'not time-relevant.' . . . However, it is obvious that medical
reports are inevitably rendered retrospectively and should not be disregarded solely on that
basis.").

had "training and experience" in the fields of medicine—particularly pain management—involved in the medical judgment at issue here." *Fleming v. Unum Life Ins. Co. of Am.*, 2018 WL 6133859, at *10 (C.D. Cal. Nov. 20, 2018). Dr. Norris has not treated a patient since 2010. *Dwyer,* at 483. Unum's continued reliance on Dr. Norris's unsupported medical reviews also fits a pattern and practice of biased claims handling which is a violation of the RSA. Dr. Norris' opinion deserves no weight.  Relying on a biased doctor shows procedural unreasonableness.

Unum's file reviewing infectious disease doctor is Elizabeth Belanger, M.D. (AR4008). She does not hold a clinical practice medical license, only one that lets her do things such as "deny financial payments[3]. Unum's claim file does not explain how Dr. Belanger's experience complies with 29 C.F.R. § 2560.503-1(h)(3)(iii). There is no information in the file regarding her experience diagnosing Lyme disease. Unum knows the Department of Labor requires a properly licensed physician is required by the regulation. *See* attached DOL opinion filed by Unum in *Abi-Aad v. Unum Grp. et al.,* Case No. 21-CV-11862-AK, U.S. District Court – District of Massachusetts Doc No. 36-1. Dr. Belanger's opinion deserves no weight. Relying on a doctor who does not have an active license to practice clinical medicine shows procedural unreasonableness.

Unum's memo refers to a file review by Dr. Antanki and another by Dr. Crawford and those by psychologists, Drs. Black and Ursprung.  But neither Dr. Antaki's, or Dr. Crawford's or Dr. Black's or Dr. Ursprung's opinions appear to be part of the appeal consideration spelled-out

---

[3] Dr. Belanger holds an administrative license from the Oregon medical board which does not permit her to practice clinical medicine. See https://omb.oregon.gov/Clients/ORMB/Public/VerificationDetails.aspx?EntityID=1524507 (last viewed 2/27/2023). Under Rule Oregon Administrative Rules of the Oregon Medical Board, 847-008-0037(2), provides "A physician…with an Administrative Medicine license may not examine, care for or treat patients…" but "may advise organizations, both public and private, on healthcare matters; authorize and deny financial payments for care…"

by Unum in the final adverse-benefit determination letter. (AR4033-4045). In litigation Unum may not expand the scope of its arguments not made in the final adverse determination. *Glista*, 378 F.3d at 131-32. The administrative record contains no information about their experience diagnosing Lyme disease.

> **4. Unum bears the burden to prove by a preponderance of the credible evidence that Dr. Moseley is disabled by mental illness by "but-for" causation.**

Basic insurance law places the burden on the insurer to prove that an exclusion applies *See Glista v. Unum Life Ins. Co. of Am.*, 378 F.3d 113, 131 (1st Cir. 2004). Since the rationale for placing the burden on insurers to prove an exclusion applies equally to a limitation. Under insurance law, the burden shifts to prove "the applicability of policy exclusions *and limitations*" alike. 17A *Couch on Ins.* § 254:12 (emphasis added).

Unum argues that Ms. Moseley and not Unum has the burden of proof to show she is not disabled "due to mental illness." *See* Unum Mem. p. 1. Not so. Unum bears the burden to prove that Ms. Moseley is disabled due to a mental illness. *See Kamerer*, 334 F. Supp. 3d at 428 (holding Unum bears the burden of proof on the 24 month "mental illness" limitation). Unum knows that conditioning disability benefits on grounds impossible to meet is arbitrary and capricious when imposed by an ERISA fiduciary. *See Cook v. Liberty Life Assur. Co. of Boston*, 320 F.3d 11, 21 (1st Cir. 2003) (unreasonable for ERISA fiduciary to demand "clinical objective" proof for chronic fatigue syndrome). Unum demanded that Ms. Moseley prove a negative; she is not disabled "due to mental illness" when she has never claimed that she is, nor has a physician or psychologist who has examined her reached that conclusion.

Even under a deferential standard of review, courts have shifted the burden to the plan fiduciary to prove exclusions and limitations. *See Lavery v. Restoration Hardware Long Term*

*Disability Benefits Plan*, 937 F.3d 71, 78-81 (1st Cir. 2019) (holding the plan administrator's denial of benefits based on an exclusion was arbitrary and capricious). In *Okuno* the Sixth Circuit held the burden of proof to show that a mental illness limitation cap on benefits after a finite period of months rests with the ERISA fiduciary, even when the fiduciary has discretionary authority to make benefit decisions. *Okuno*, 836 F.3d at 609.

The Supreme Court has rejected readings of ERISA that would afford less protection to participants than before its enactment. *Firestone Tire & Rubber Co*., 489 U.S. 101, 113-14 (1989). Interpretive analysis provides no basis for distinguishing between exclusions and limitations for purposes of burden shifting. *Cf. Andover Newton Theological Sch., Inc. v. Cont'l Cas. Co.*, 964 F.2d 1237, 1243 (1st Cir. 1992) (about distinguishing terms of coverage from exclusions, "If an insurer were able to distribute provisions limiting liability throughout a policy, with the expectation that its shouldering of the burden of proof would be limited to the single section entitled, 'Exclusions,' this would create considerable incentive to obfuscation and subterfuge.").

This is sound policy. First, insurance companies, the biggest providers of welfare-benefit plans, are familiar with the burden shifting. Second, knowing that the insurer will bear the burden should result in an accurately drafted plan. Third, "Congress sought to offer beneficiaries, not fiduciaries, more protection than they had at common law" while trying to simplify the benefit process. *Brotherston v. Putnam Investments*, LLC, 907 F.3d 17, 37(1st Cir. 2018).

### a.   Due to "mental illness" requires a "but-for" standard of proof.

The limitation applies when disability is "due to Mental Illness" which is like "but-for" causation of total disability. "Due to" places a the burden on Unum. Unum failed to prove on "but-for" causation that Ms. Moseley cannot work solely due to mental illness. This

case is unlike *Dutkewych v. Standard Ins. Co.*, 781 F.3d 623 (1st Cir. 2015). In *Dutkewych*, the mental illness limitation was not "due to" mental illness but broadly written as "caused or contributed" to the participant's disability which is a much easier standard for the insurance company to prove. *Id*. at 635. Also, Mr. Dutkewych had a history of mental illness. *Id.* at 629-630.

Furthermore, even if her purported mental illness were cured, Ms. Moseley's co-morbid physical limitations and non-exertional limitations would still entitle her to benefits. *See George v. Reliance Standard Life Ins. Co.*, 776 F.3d 349, 355–56 & n.9 (5th Cir. 2015) (holding former pilot suffering debilitating pain from lower leg amputation independently rendered him disabled apart from depression under "but-for" analysis). Ms. Moseley had many physical impairing conditions best summarized in the ALJ's order in 2019. These included documented "episodic pain in her neck, back and knee, chronic fatigue and malaise, brain fog, memory problems, slowed cognitive processing and response speeds" and sleep disturbances" and more. (AR2590).

Several mental health care providers all found that Lyme disease was the cause of Ms. Moseley's impairment and that she was not psychiatrically impaired by anxiety or depression. The presence of anxiety and depression was all secondary to Ms. Moseley losing her professional life and social life. Had she not suffered debilitating symptoms of Lyme disease, she would not have suffered from secondary depression and anxiety. Depression and anxiety were not the "but-for" cause of her disability.

### (i)      Bruce Levine, Ph.D., provided supportive care for Ms. Moseley.

On May 11, 2019, Dr. Levine explained to Unum his diagnoses and treatment history of Ms. Moseley in response to Unum's psychologist's questions. (AR3403-07). Dr. Levine explained that he diagnosed her with adjustment disorder "along with Neurocognitive Disorder

due to Chronic Lyme Disease. (AR3043). He continued, "I see the chain of causality of Lyme Disease leading to Chronic and Persisting Lyme Disease leading to reactive symptoms of depression and anxiety as the reality of her diminished personal and professional lives became clear." (AR3043). In response to the question, "Do you agree that Ms. Moseley's cognitive complaints are psychologically medicated [sic] and not based on an underlying medical condition?" Dr. Levine responded, "No. I understand Ms. Moseley's cognitive complaints to be directly related to her medical condition, persistent and chronic Lyme Disease. (AR3043). Over the ensuing years, Dr. Levine provided his notes to Unum too. (AR2607-13; 3251-3256; 3507-12; 3759-3760; 3764-65; 3771-72). On September 18, 2021, Dr. Levine provided another narrative report where he concluded, "I understand Ms. Moseley's cognitive complaints to be directly related to her underlying medical condition, persistent and chronic Lyme Disease." (AR3965-67).

> ### (ii)     Carolyn Solzehenisyn, M.D., diagnosed Ms. Moseley with a Major Neurocognitive Disorder due to a Medical Condition.

On May 7, 2019, Carolyn Solzehenisyn, M.D., a psychiatrist diagnosed Ms. Moseley with a Major Neurocognitive Disorder due to a Medical Condition. The medical condition was Lyme disease. (AR1936).

> ### (iii)    Melinda Warner, Ed.D., provided supportive care to Moseley because of the symptoms of Lyme disease.

On June 11, 2019, Dr. Warner reported that she had "seen [] Ms. Moseley for remedial treatment secondary to Lyme disease…" (AR1928). Dr. Warner provided her clinical notes to Unum. (AR1948; 1998-2000; 2483; 2520-25; 3031).   Dr. Warner noted that Ms. Moseley would have difficulty at a regular job on a sustained basis for the reasons explained by Dr. Jemsek. (AR2525).

**(iv)    Vicki Anderson, Ph.D. provided supportive care to Moseley because of the symptoms of Lyme disease.**

Vicki Anderson, Psy.D., provided supportive care to Ms. Moseley for a time. Like, other psychologists treating Ms. Moseley, Dr. Anderson diagnosis was: "Depressive Disorder Due to Another Medical Condition With depressive features client experiencing significant depression associated with lyme disease." (AR 1949). Dr. Anderson provided other notes to Unum. (AR1049-1087; 1750-52; 1860-61;1942-47; 2601-06). She reported that medical conditions described by Dr. Jemsek made working impossible for Ms. Moseley. (AR1750).

**(v)    Lisa Fitzpatrick, Psy.D., a non-examining psychologist, found Ms. Moseley occupationally impaired.**

A non-examining psychologist, Lisa Fitzpatrick, offered an opinion about Ms. Moseley's application for disability benefits from the Social Security Administration. (AR2105-07). Dr. Fitzpatrick attributed occupational deficits, including "fatigue, understanding and memory limitations, sustained concentration and persistence limitations and ability to adapt limitations" attributable to "depressive, bipolar and related disorders, and anxiety and obsessive-compulsive disorders. (AR2107). The ALJ found her opinion persuasive as to occupational impairment but not the causes. The ALJ rejected Dr. Fitzpatrick's opinion on causation, because the ALJ concluded Lyme disease was the cause of the occupational deficits. (AR2591).

**5.   Lyme disease is diagnosed by clinical judgment and not laboratory tests.**

Lyme disease is a clinical diagnosis, not one based on laboratory testing alone. Throughout its evaluation of Ms. Moseley's claim, Unum placed an undue emphasis on the lack of certain serologic markers and other lab testing. Lyme disease is not proved by laboratory testing:

> According to the CDC, Lyme Disease is diagnosed through the presence of the signs and symptoms described above and a patient history of exposure to blacklegged or deer ticks. *Id.* at *Diagnosis and Testing*. The CDC further states that if a patient shows symptoms typical of Lyme Disease, "[l]aboratory tests are

> *helpful* [for diagnosis] if used correctly and performed with validated methods."
> *Id.* (emphasis added). Nevertheless, it is important to note that the CDC does not
> state that positive laboratory tests are *necessary* to diagnose a patient with Lyme
> Disease.

*McDonnell v. First Unum Life Ins. Co.*, 2013 WL 3975941, at *16 (S.D.N.Y. Aug. 5, 2013)

(emphasis in the original).

The CDC's Lyme-testing criteria and procedures are a matter of public record, and it

cannot be reasonably questioned that the CDC website is an accurate source for those standards.

The First Circuit took judicial notice of information from the CDC's webpages about Lyme

disease even though it was "unclear to what extent the information on the CDC's website [wa]s

formally part of the record." *Gent v. CUNA Mut. Ins. Soc'y* 611 F.3d 79, 84 n.5 (1st Cir. 2010)[4].

As explained below, Unum's memo never acknowledges that in the end a Lyme disease

diagnosis is a clinical judgment, not determined by lab tests alone. Instead, Unum focuses on the

lack of laboratory results. *See* Unum Mem. pp 9-15. Unum's election to not recognize that

diagnosing Lyme disease is a clinical judgment is another example of procedural unfairness.

These six factors show that Unum acted procedurally unfairly. Unum's failure to abide by

the RSA and comply with Department of Labor regulations viewed under a lens of Unum's

biased claims adjudication history warrants concluding that Unum never provided to Ms.

Moseley full and fair review under ERISA. 29 U.S.C. § 1133.  Ms. Moseley's case is not an

outlier. The result should be reversal and reinstatement of benefits to the date of termination

August 31, 2020. (AR4034).

---

[4] Ms. Moseley's case is markedly different from Ms. Gent's. Ms. Gent had a documented history
of psychiatric treatment for depression that had included in-patient hospitalization for depression.
*Gent*, at 81; 86. Also, the First Circuit decided the case without resolving which party bore the
burden of proof. *Id*. at 83.

II.     **The standard of review before the Court is under the abuse of discretion**

        **standard tempered by Unum's procedural unfairness.**

    Ms. Moseley agrees with Unum's position that under the LTD Plan review before the

Court is for abuse of discretion. (AR0131). Unum Mem. p. 16. The deferential standard of

review is forgiving but is "not a rubber stamp." *Wallace v. Johnson & Johnson*, 585 F.3d 11, 15

(1st Cir. 2009). The standard "asks whether" an ERISA fiduciary's "decision is supported by

substantial evidence in the record" and "in short" the decision "must be reasonable." *Colby v.*

*Union Sec. Ins. Co. & Mgmt. Co. for Merrimack Anesthesia Assocs. Long Term Disability Plan*,

705 F.3d 58, 61 (1st Cir. 2013) (cleaned up).

    **A. Unum failed to conduct itself with "higher than marketplace" standards as an**
    **ERISA fiduciary.**

    Reasonableness must be viewed while considering financial conflict. When the ERISA

fiduciary is the benefit decider and benefit payer, the court must place its thumb on the scale

questioning the insurance fiduciary's independence when it fails to provide for full and fair

review required by the ERISA plan, the Department of Labor regulations and ERISA common

law. *See Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 117 (2008) ("conflict ... should prove more

important (perhaps of great importance) where circumstances suggest a higher likelihood that it

affected the benefits decision"). As the benefit decider and benefit payer, Unum's conflicting

role with its duty of a fiduciary against an obligation to make profits for shareholders causes a

never-ending cycle of opportunism.  Structural conflict weakens the case for deference to the

ERISA fiduciary's interpretation of LTD plan language. For that reason, the Supreme Court

imposes "higher-than-marketplace quality standards" when determining ERISA benefits claims. *Id.*

at 115. Terminating benefits saved Unum over $7858.01 per  month that would have been

payable to Ms. Moseley for several more years.(AR3187). That is a partial explanation for Unum's unreasonable handling of her claim.

1.   **Unum has a documented history of unfair claims practices in ERISA cases and individual disability insurance policy adjudication.**

The leading ERISA scholar chronicled Unum's pattern of misconduct in mishandling claims. John Langbein, T*rust Law as Regulatory Law: The Unum/Provident Scandal and Judicial Review of Benefit Denials Under ERISA*, 101 Nw.U. L.Rev. 1315 (2007) The Supreme Court favorably cited the article in *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 114 (2008). Yet years after the RSA, Unum never altered its ways. *See* Phillip W. Thomas, *Fifteen Years Later - Did The Unum Group Improve Its ERISA Claims Handling Practices?* 39 Mississippi College Law Review, 199 (2021). The author concluded after surveying a mountain of court decisions: Contrary to ERISA's intent, Unum abrogates its fiduciary responsibility and administers claims as an adversary. Unum did not improve its claims handling practices after the 2004 RSA. Unum's criticized practices continued unabated to the present time. *Id.* at 236. Most recently in this judicial district Unum was called out again for unfair claim practices in acting as an ERISA fiduciary. *See Host v. First Unum Life Ins. Co.*, 569 F. Supp. 3d 48, 59–60 (D. Mass. 2021) ("Having found that Unum acted in bad faith, and not as a true fiduciary, I conclude that Unum is demonstrably unable to exercise its discretion honestly and fairly."). This conclusion follows another case from Massachusetts cited by the Supreme Court in *Metro. Life Ins. Co. v. Glenn. Radford Trust v. First Unum Life Ins. Co., of Am.* 321 F.Supp.2d 226, 247 (D.Mass.2004) (finding a "pattern of erroneous and arbitrary benefits denials, bad faith contract misinterpretations, and other unscrupulous tactics").

## CONCLUSION AND RELIEF SOUGHT

The court should consider the question; "to what extent has [Unum] conducted itself as a true fiduciary attempting to fairly decide a claim, letting the chips fall as they may?" *Lavery*, 937 F.3d at 79. The answer is Unum failed to conduct itself as an unbiased fiduciary. For the reasons explained above, the Court should reinstate benefits retroactive to the date of termination (August 31, 2020) or enter an order of remand, and further permit plaintiff to file a motion for attorney's fees and costs under 29 U.S.C. § 1132(g)(1).

Respectfully submitted,

**SUSAN J. MOSELEY,**


DATED:  February 27, 2023          */s/ Jonathan M. Feigenbaum, Esq.*
                                   Jonathan M. Feigenbaum, Esq. (#546686)
                                   184 High Street, Suite 503
                                   Boston, MA 02110
                                   (617) 357-0700
                                   jonathan@erisaattorneys.com


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


DATED:  February 27, 2023          By:  */s/ Jonathan M. Feigenbaum*
                                        Jonathan M. Feigenbaum