UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUSAN J. MOSELEY,<br>        Plaintiff,<br><br>        v.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA and UNUM GROUP,<br>        Defendants | CIVIL ACTION NO.  4:22-CV-40079-RGS |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 56.1, plaintiff Susan J. Moseley responds to defendants' statement of facts, Doc No. 10, as follows:

   1.   Susan J. Moseley was covered by an employee benefit plan provided by her employer, the National Apartment Association, funded by a policy issued by Unum Life (the "Policy").  (Administrative Record, Volume I, pp. UA-POL-LTD-1-52).[1]

   **RESPONSE: Undisputed.**

   2.  With regard to disability, the Policy provides the following:

   **HOW DOES UNUM DEFINE DISABILITY?**

   You are disabled when Unum determines that:

   -      you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and

---

[1] Hereinafter references to the Administrative Record are designated by the volume number and the applicable page number(s).

- you have a 20% or more loss in your indexed monthly earnings due to the same sickness of injury.

After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably suited by education, training or experience.  (I, p. 30).

**RESPONSE: Undisputed.**

3. The Policy defines regular occupation as:

**REGULAR OCCUPATION** means the occupation you are routinely performing when your disability began.  Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.  (I, p. 42).

**RESPONSE: Undisputed.**

4. In the case of disabilities due to mental illness the Policy provides as follows:

**WHAT DISABILITIES HAVE A LIMITED PAY PERIOD UNDER YOUR PLAN?**

Disabilities, due to sickness or injury, which are primarily based on **self-reported symptoms**, and disabilities due to **mental illness** have a limited pay period up to 24 months.

Unum will continue to send you payments beyond the 24 month period if you meet one or both of these conditions.

1. If you are confined to a **hospital or institution** at the end of the 24 month period, Unum will continue to send you payments during your confinement.

If you are still disabled when you are discharged, Unum will send you payments for a recovery period of up to 90 days.

If you become reconfined at any time during the recovery period and remain confined for a least 14 days in a row, Unum will send payments during that additional confinement and for one additional recovery period up to 90 more days.

2. In addition to item 1, if, after the 24 month period for which you have received payments, you continue to be disabled and subsequently become confirmed to a hospital or institution for at least 14 days in a row, Unum will send payments during the length of the reconfinement.

Unum will not pay beyond the limited pay period as indicated above, or the maximum period of payment, whichever occurs first.

Unum will not apply the mental illness limitation to dementia if it is a result of:

- stroke;
- trauma
- viral infection;
- Alzheimer's disease; or
- other conditions not listed which are not usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment. (I, p. 30.)

**RESPONSE: Undisputed.**

5.  The Policy defines mental illness as:

**MENTAL ILLNESS** means a psychiatric or psychological condition regardless of cause such as schizophrenia, depression, manic depressive or bipolar illness, anxiety, personality disorders and/or adjustment disorders or other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment. (I, p. 40).

**RESPONSE: Undisputed.**

6.  Ms. Moseley was employed by the National Apartment Association beginning January 2015. (V, p. 1761).

**RESPONSE: Undisputed.**

7.  Ms. Moseley's last day of work was May 2, 2018. She applied for disability benefits the next day, claiming a disability from Lyme disease. (II, pp. 120-121, 157-158).

**RESPONSE: Undisputed.**

8.  At the time Ms. Moseley applied for disability benefits in May 2018 she was employed by the National Apartment Association as a vice president of business development. (II, pp. 154-155, 390-394).

**RESPONSE: Undisputed.**

9. Unum Life had a vocational review performed. The vocational review determined that Ms. Moseley's occupation in the national economy is a combination of Vice President of Business Development and a Vice President of Sales and Marketing. (VIII, pp. 3972-3975).

**RESPONSE: Undisputed.**

## Ms. Moseley's Mental Health Conditions.

10. Ms. Moseley's had a neuropsychological evaluation in June 2015. (III, pp. 637-645)

**RESPONSE: Undisputed.**

11. In September 2016, Ms. Moseley began seeing a psychotherapist, Vicki Anderson, Psy.D. Ms. Moseley first saw Dr. Anderson from September 2016 to April 2018. During that time, in addition to psychotherapy, Ms. Moseley was prescribed Wellbutrin for her depression and Lorazepam for her anxiety. Dr. Anderson found Ms. Moseley to be experiencing significant depression and anxiety. (IV, pp. 1049-1087).

**RESPONSE: Partially disputed.** Dr. Anderson's diagnosis was: "Depressive Disorder Due to Another Medical Condition With depressive features client experiencing significant depression associated with lyme disease." (AR 1949). Disputed to the extent that defendant provides a selective medical picture.

12. Ms. Moseley saw Dr. Anderson for treatment approximately twice per month from September 2016 to late October 2017. (IV, pp. 1049-1087).

    **RESPONSE: Undisputed.**

13. In October 2018, in connection with her application for Social Security disability benefits, Ms. Moseley's records were reviewed by a psychologist on behalf of the Social Security Administration, Lisa Fitzpatrick, Psy.D. Dr. Fitzpatrick found Ms. Moseley suffering from severe depressive and anxiety disorders. She also found that the anxiety and depression could be expected to produce fatigue; understanding, memory and concentration limitations; and the inability to adapt to limitations. Dr. Fitzpatrick found Ms. Moseley's conditions to be moderately limiting. (VI, pp. 2105-2111).

    **RESPONSE: Disputed.** Dr. Fitzpatrick attributed occupational deficits, including "fatigue, understanding and memory limitations, sustained concentration and persistence limitations and ability to adapt limitations" attributable to "depressive, bipolar and related disorders, and anxiety and obsessive-compulsive disorders. (AR2107). The Administrative Law Judge ("ALJ") found her opinion persuasive as to occupational impairment but not the causes. The ALJ rejected Dr. Fitzpatrick's opinion on causation, because the ALJ concluded Lyme disease was the cause of the occupational deficits. (AR2591). The ALJ documented that he found evidence of "episodic pain in her neck, back and knee, chronic fatigue and malaise, brain fog, memory problems, slowed cognitive processing and response speeds" and sleep disturbances" and more. (AR2590).

14. In February 2019, Dr. William Black, a psychologist, conducted a review on behalf of Unum Life. (II, pp. 352-364)[1].

    **RESPONSE. Partially disputed.** To be clear, Dr. Black conducted a file review.

15. A second review was conducted by another medical consultant of Unum Life, Alex Ursprung, Ph.D., also a psychologist. Dr. Ursprung agreed with Dr. Black that Ms. Moseley was disabled from her behavioral health conditions, at least through the neuropsychological examination in July 2018. However, both Dr. Black and Dr. Ursprung noted that Ms. Moseley did not appear to be engaged in regular and appropriate care for her behavioral health conditions and that appropriate care would be a psychiatric consultation and weekly or every other week individual psychotherapy. (IV, pp. 1640-1641).

    **RESPONSE. Disputed.** To be clear, Dr. Ursprung conducted a file review. Because "behavioral health" is not defined the second sentence is disputed. The last sentence is disputed because Ms. Moseley had been under the care by psychologists at various times. To the extent that the last sentence is an expert opinion contending that other physicians treating Ms. Moseley would not providing adequate care, Drs. Black and Ursprung lack the requisite, education, training and experience to offer an expert opinion criticizing care. Unum's claim

---

[1] On November 4, 2020, Ms. Moseley's counsel deposed Dr. Black in *Robateau v. Unum Life Ins. Co. of Am.*, C.A. 18-cv-11510-TSH, US District Court Massachusetts. Mr. Hamilton represented the defendant in that case. Dr. Black stated as of that date, he had been deposed or testified 530 times.

file does not explain how these two psychologists have experience that complies with 29 C.F.R. § 2560.503-1(h)(3)(iii).

16. In April 2019, Ms. Moseley began seeing Dr. Anderson again. From April to October 2019, visits were monthly. Dr. Anderson continued to diagnose Ms. Moseley with significant depression and anxiety, and Ms. Moseley continued to take Wellbutrin and Lorazepam. (V, pp.1750-1752, 1860-1861, 1942-1947, 2601-2606).

**RESPONSE: Partially disputed.** Dr. Anderson's diagnosis was: "Depressive Disorder Due to Another Medical Condition With depressive features… client experiencing significant depression associated with lyme disease." (AR 1750). Disputed to the extent that defendant provides a selective medical picture.

17. In an Attending Physician Statement dated April 9, 2019, Dr. Anderson gave a primary diagnosis of a depressive disorder due to another medical condition (chronic Lyme disease) and also stated Ms. Moseley had an unspecified anxiety disorder. (V, pp. 1772-1774).

**RESPONSE: Disputed.** Dr. Anderson referred to an ICD Code. (AR1772). "I believe she has Depressive Disorder Due to Another Medical Condition (chronic Lyme disease)." (AR1774).

18. Dr. Anderson completed a Mental Impairment Questionnaire dated August 19, 2019. In that, she gave a diagnosis which included depression and anxiety. (VI, pp. 2012-2017).

**RESPONSE: Partially disputed.** Dr. Anderson wrote in response to question 15. "Please describe any additional reasons not covered above why your patient would have

difficulty working at a regular job on a sustained basis." Dr. Anderson wrote, "See Dr. Jemsek's assessment documentation." (AR2017).

19.     Ms. Moseley began seeing a neuropsychologist, Melinda Warner, in April 2019. Ms. Moseley saw Ms. Warner until August 2019. (V, p. 1923; VI, p. 2001).

**RESPONSE: Undisputed.**

20.     In September 2019, Dr. Warner completed a Mental Impairment Questionnaire. (VII, pages 2520-2532). Dr. Warner wrote in response to question 15. "Please describe any additional reasons not covered above why your patient would have difficulty working at a regular job on a sustained basis." Dr. Warner wrote, "Please see attached. See notes from Dr. Jemsek. (AR2525).

**RESPONSE: Undisputed.**

21.     Ms. Moseley stopped seeing Dr. Warner in August 2019 and began seeing another psychologist, Bruce Levine, Ph.D. in October 2019. (VII, p. 2607-2611).

**RESPONSE: Undisputed.**

22.     Dr. Levine opined that Ms. Moseley was suffering from anxiety and depression due to a medical condition as well as a mild neurocognitive disorder. (VIII, pages 3248-3251).

**RESPONSE: Partially disputed.** On May 11, 2019, Dr. Levine explained to Unum his diagnoses and treatment history of Ms. Moseley in response to Unum's psychologist's questions. (AR3403-07). Dr. Levine explained that he diagnosed her with adjustment disorder "along with Neurocognitive Disorder due to Chronic Lyme Disease. (AR3043). He continued, "I see the chain of causality of Lyme Disease leading to Chronic and Persisting Lyme Disease leading to reactive symptoms of depression and anxiety as the reality of her diminished personal and professional lives became clear." (AR3043). In

8

response to the question, "Do you agree that Ms. Moseley's cognitive complaints are psychologically medicated [sic] and not based on an underlying medical condition?" Dr. Levine responded, "No. I understand Ms. Moseley's cognitive complaints to be directly related to her medical condition, persistent and chronic Lyme Disease. (AR3043). Over the ensuing years, Dr. Levine provided his notes to Unum too. (AR2607-13; 3251-3256; 3507-12; 3759-3760; 3764-65; 3771-72). On September 18, 2021, Dr. Levine provided another narrative report where he concluded, "I understand Ms. Moseley's cognitive complaints to be directly related to her underlying medical condition, persistent and chronic Lyme Disease." (AR3965-67).

23. In May 2020, Unum Life had Dr. Ursprung conduct another review. Dr. Ursprung concluded Ms. Moseley's restrictions and limitations remained supported due to her behavioral health issues. It was Dr. Ursprung's opinion that the basis for Ms. Moseley's cognitive difficulties was psychological, and in this respect he disagreed with Dr. Levine. (VIII, pp. 3415-3516).

**RESPONSE: Partially disputed.** To be clear, Dr. Ursprung conducted a file review only. The above two sentences are an accurate summary of Dr. Ursprung's opinion. The substance is disputed by the prior determinations of treating psychologist's, Drs. Anderson, Warner and Levine explained in prior responses above. Also, by Dr. Jemsek. (AR0370-71; AR665-94).

24. Unum Life undertook a review of Ms. Moseley's claim and approved long-term disability benefits by letter dated April 11, 2019. Unum Life found that Ms. Moseley qualified for benefits based upon her mental health conditions of depression and anxiety; that she became disabled as of May 3, 2018; and that benefits would begin as of August 2018. (V, pp. 1723-1732).

**RESPONSE: Undisputed as to Unum's decision to pay benefits.** Disputed as to the cause of Ms. Moseley's disability which is the core issue before the Court.

## Ms. Moseley's Medical Condition

25. In March 2015, Ms. Moseley had a consult with Dr. Mark Delman, an infectious disease specialist, with her chief complaint being concerned about Lyme disease. In his office note, Dr. Delman noted that Ms. Moseley had a negative Lyme serology as part of her evaluation. His assessment included the following:

PT symptoms are not suggestive of Lyme disease. If this was long-standing neuroborreliosis, I would expect a positive serology, which is not the case here. No classic Sx of earlier stages of Lyme noted. No other clear infectious etiology of Sx. In absence of fevers, would not pursue more of an infectious workup. If an LP is performed for other causes, would include Lyme PCR and Lyme serology in the CSF. However, would not recommend an LP just for this reason as my suspicion is very low. (III, pp. 933-934).

**RESPONSE: Undisputed.**

26.	In early 2015, Ms. Moseley underwent imaging and lab tests, all of which were essentially normal, including an MRI of the brain, cervical spine and thoracic spine; MRAs of the head and neck, a lumbar puncture CT; a vestibular evaluation; and as previously described a neuropsychological evaluation. (III, pp. 901-937).

**RESPONSE: Disputed.** Everything reported in pages 901-937 were not normal. "Mild left beating nystagmus. (AR0903). "Vertigo." (AR0905). "There is significant vestibular component as shown on VNG. (AR0911). "Psychiatric: Psych: no depression or anxiety." (AR0914). "Mild degenerative spondylosis that is most conspicuous at C5-C6. (AR0925). "Chronic fatigue." (AR0934). "Neurocognitive deficits. (AR0934). "Findings suggestive of old lacunar infacts involving frontal lobes and left cerebellar hemisphere." (AR0937).

27.	In July 2015, Ms. Moseley began treating at Jemsek Specialty Clinic. (II, pp. 689-694).

**RESPONSE. Undisputed**.

28.	Ms. Moseley had a course of antibiotic treatment at the Jemsek Specialty Clinic from October 2015 to September 2017. (III, pp. 667-688).

**RESPONSE. Undisputed.**

29.	At her visit to the Jemsek Specialty Clinic in September 2017, Ms. Moseley reported that she did not think things were any better than they were at the beginning. (III, pp. 667-668).

11

**RESPONSE. Disputed.** Without context, the sentence is hanging. "Her job obviously requires functioning at a high level which she has been doing throughout her illness (or attempted to do). She is disappointed to report that she does not think things are any better than at the beginning. The patient does plan to step down from her work and go to a consultant role or something part-time and 'spend more time getting better'." (AR0667).

30. In January 2019, Unum Life had Ms. Moseley's medical records reviewed by Dr. Joseph Antaki, a physician board certified in internal medicine. Dr. Antaki found that Ms. Moseley did not have restrictions and limitations due to a physical condition. Specifically, with respect to Lyme disease, Dr. Antaki noted the following:

- Ms. Moseley's March 2018 office visit to her primary care physician, Dr. Schneider described a physical exam without abnormalities and recommended that Ms. Moseley follow up annually.
- Ms. Moseley's office visit to Dr. Jemsek on March 13, 2018 described Ms. Moseley's physical exam as "surprisingly benign." Ms. Moseley's serum test results referenced in the file from June 15, 2015 were not consistent with the diagnosis of Lyme disease. Ms. Moseley had also reported that she had never had positive titters.
- Ms. Moseley's lumbar puncture results did not support Lyme disease. ☐ Dr. Delmar, the infectious disease physician, did not think Ms. Moseley's symptoms were infection related. (VI, p.2048).

**RESPONSE. Disputed.** Dr. Jemsek diagnosed Ms. Moseley with Lyme disease. (AR0370-71; AR665-94). The ALJ concluded Lyme disease was the cause of the occupational deficits. (AR2591). The ALJ determined that Ms. Moseley experienced many physically disabling conditions due to Lyme disease. (AR2586-2592).

Unum's claim file does not explain how Dr. Antaki's experience complies with 29 C.F.R. § 2560.503-1(h)(3)(iii).

Lyme disease is a clinical diagnosis:

> According to the CDC, Lyme Disease is diagnosed through the presence of the signs and symptoms described above and a patient history of exposure to blacklegged or deer ticks. *Id.* at *Diagnosis and Testing.* The CDC further states that if a patient shows symptoms typical of Lyme Disease, "[l]aboratory tests are *helpful* [for diagnosis] if used correctly and performed with validated methods." *Id.* (emphasis added). Nevertheless, it is important to note that the CDC does not state that positive laboratory tests are *necessary* to diagnose a patient with Lyme Disease.
>
> *McDonnell v. First Unum Life Ins. Co.*, 2013 WL 3975941, at *16 (S.D.N.Y. Aug. 5, 2013) (emphasis in the original).

31.     Unum Life had Ms. Moseley's records reviewed by a second physician, Jacqueline Crawford, M.D., board certified in neurology, and neuromuscular and electrodiagnositic medicine. Dr. Crawford also concluded that Ms. Moseley's cognitive issues were not due to Lyme disease. The basis of her opinion included the following:

- The file did not contain evidence of a verified tick attachment.
- Ms. Moseley denied ever experiencing a rash consistent with Lyme disease.
- Ms. Moseley's symptoms arose in December 2014 in Chicago, which would be highly atypical for Lyme disease since tick exposure is not anticipated in cool weather months.
- Ms. Moseley did not suffer from a facial palsy on her examinations, as might be expected by a patient with neuroborreliosis.
- Lab testing to detect Lyme disease was not supportive as there was no evidence of a positive Lyme antibody screen; no evidence of a positive Western Blot for Lyme disease; no evidence of a positive Lyme PCR (a test to detect the DNA of Lyme); Ms. Moseley's CSF evaluations was inconsistent with Lyme disease or any other infectious agent; white blood cells were not elevated; and the IG synthesis rate was not elevated.
- Dr. Delman concluded in March 2015 that Ms. Moseley's symptoms were not supportive of Lyme disease.

- Ms. Moseley's test results from the neuropsychological testing performed in July 2018 demonstrated atypical variability. Dr. Crawford found the extreme variability ranging from very superior to deficient was inconsistent with physically based cognitive deficits attributable to an infection, but was consistent with behavioral health conditions. (VI, pp. 2056-2057).

**RESPONSE. Disputed.** Dr. Jemsek diagnosed Ms. Moseley with Lyme disease. (AR0370-71; AR665-94). The ALJ concluded Lyme disease was the cause of the occupational deficits. (AR2591). The ALJ determined that Ms. Moseley experienced many physically disabling conditions due to Lyme disease. (AR2586-2592).

Lyme disease is a clinical diagnosis, not one based on laboratory testing alone. Throughout its evaluation of Ms. Moseley's claim, Unum placed an undue emphasis on the lack of certain serologic markers and other lab testing. Lyme disease is not proved by laboratory testing. *See McDonnell v. First Unum Life Ins. Co.*, 2013 WL 3975941, at *16 (S.D.N.Y. Aug. 5, 2013) and prior response paragraph.

Unum's claim file does not explain how Dr. Crawford's experience complies with 29 C.F.R. § 2560.503-1(h)(3)(iii).

32. In February 2019, a medical consultant for the Social Security Administration conducted an evaluation and determined that while Ms. Moseley had a moderate mental limitation, no physical impairment was established. (VI, pp. 2327-2329).

**RESPONSE. Disputed.** Dr. Jemsek diagnosed Ms. Moseley with Lyme disease. (AR0370-71; AR665-94). The ALJ rejected the consultant's finding and concluded that Lyme disease was the cause of Ms. Moseley's occupational deficits. (AR2591). The ALJ

14

determined that Ms. Moseley experience many physically disabling conditions due to Lyme disease. (AR2586-2592).

33.     Another medical review was conducted by Dr. Antaki in October 2019. Dr. Antaki continued to find that the medical evidence did not support restrictions and limitations from a non-behavioral health condition.  (VI, pp. 2072-2073).

> **RESPONSE. Disputed.** Dr. Jemsek diagnosed Ms. Moseley with Lyme disease. (AR0370-71; AR665-94). The ALJ rejected concluded Lyme disease was the cause of the occupational deficits. (AR2591). The ALJ determined that Ms. Moseley experienced many physically disabling conditions due to Lyme disease. (AR2586-2592).

34.     Dr. Antaki wrote to Dr. Jemsek on October 21, 2019 and stated that it was his opinion that the records supported restrictions and limitations related to the diagnosis of depression and anxiety and asked whether there was any other information Dr. Jemsek could provide.  Dr. Jemsek's response was "I agree."  (VI, pp. 2076-2077, 2081).

> **RESPONSE. Disputed.** This is the same type of conduct by a physician taking a statement out of context and resulting in a reversal by the First Circuit.  *See Jette v. United of Omaha Life Ins. Co.*, 18 F.4th 18, 25 n. 10  (1st Cir. 2021) ("The restrictions advised by Dr. Bulczynski [treating surgeon] on December 23, 2015 are, in reality, the restrictions advised by Dr. Heimonen [an insurance company employee]; Dr. Bulczynski merely checked that he agreed with Dr. Heimonen's restrictions"). Based on all the other evidence in the record, Dr.  Jemsek determined that Ms. Moseley was disabled due to Lyme disease. (AR0370-71; AR665-94).

35. In October 2019, Unum Life had Dr. Crawford conduct another review. Dr. Crawford found that Dr. Jemsek's opinion that Ms. Moseley was impaired by Lyme disease was not supported by the data. (VI, pp. 2085-2087).

**RESPONSE. Disputed.** Dr. Jemsek diagnosed Ms. Moseley with Lyme disease. (AR0370-71; AR665-94). The ALJ rejected concluded Lyme disease was the cause of the occupational deficits. (AR2591). The ALJ determined that Ms. Moseley experienced many physically disabling conditions due to Lyme disease. (AR2586-2592).

36. In October 2019, Ms. Moseley was awarded Social Security disability benefits. (VII, pp. 2587-2592).

**RESPONSE: Undisputed.**

37. Subsequent to receiving the Social Security decision in late 2019, Unum Life asked both Dr. Antaki and Dr. Crawford to conduct another review. Dr. Antaki noted that the information upon which the Social Security decision was based was the same information he had previously reviewed and therefore he decision did not change his opinion. (VIII, pp. 3163-3164). Dr. Crawford came to the same conclusion. (VIII, pp. 3170-3172).

**RESPONSE. Disputed.** Dr. Jemsek diagnosed Ms. Moseley with Lyme disease. (AR0370-71; AR665-94). The ALJ rejected concluded Lyme disease was the cause of the occupational deficits. (AR2591). The ALJ determined that Ms. Moseley experienced many physically disabling conditions due to Lyme disease. (AR2586-2592).

38. Dr. Antaki and Dr. Crawford each conducted a final review in August 2020. Both physicians continued to find Lyme disease not to be disabling and both noted Ms.

Moseley's more active lifestyle including cross-country skiing, yoga, overseeing condo renovations, involvement in the condo association, taking a wilderness first aid course, and hosting dinners. (IX, pp. 3695-3697; 3703-3704).

**RESPONSE. Disputed.** Dr. Jemsek diagnosed Ms. Moseley with Lyme disease. (AR0370-71; AR665-94). The ALJ rejected concluded Lyme disease was the cause of the occupational deficits. (AR2591). The ALJ determined that Ms. Moseley experienced many physically disabling conditions due to Lyme disease. (AR2586-2592). Unum offers no explanation how Lyme disease is diagnosed by taking into consideration participating in a condo association meeting, taking a wilderness first aid course, and hosting dinners.

39. Ms. Moseley received the full 24 months of benefits for a mental illness condition and those benefits ended in August 2020. (IX, pp. 3710-3715).

**RESPONSE. Undisputed.**

40. Ms. Moseley was offered the opportunity for an administrative appeal pursuant to the provisions of ERISA. (IX, pp. 3710-3715).

**RESPONSE. Undisputed.**

41. Ms. Moseley did pursue an administrative appeal. (IX, pp. 3762-3763).

**RESPONSE. Undisputed.**

42.     In 2022, in connection with Ms. Moseley's administrative appeal, Unum Life conducted its last medical review of Ms. Moseley's claim. Ms. Moseley's claim was reviewed by two physicians. The first, Dr. Scott Norris, is board certified in family, occupational, and aerospace medicine. The second physician was Dr. Elizabeth Belanger, who is board certified in internal medicine and infectious diseases. (IX, pp. 3976-3989).

**RESPONSE. Undisputed.**

43.     Both Dr. Norris and Dr. Belanger conducted a review of Ms. Moseley's medical history and issued detailed reports. (IX, pp. 3976-3989).

**RESPONSE. Undisputed.**

44.     Both Dr. Norris and Dr. Belanger found Ms. Moseley was not unable to engage in her occupational duties due to non-behavioral health conditions. In particular, with regard to Lyme disease or any other infectious disorder, Dr. Belanger, an infectious disease specialist, made numerous findings including the following:

- Dr. Belanger noted that the Center for Disease Control criteria for a clinical diagnosis of Lyme disease which had been updated in 2022 required one of the following disease manifestations to be reported by a healthcare provider: erythema migraine rash, objective joint swelling, lymphocytic meningitis, cranial neuritis (particularly unilateral or bilateral facial palsy), radiculoneuropathy, encephalomyelitis, or acute onset high-grade atrioventricular conduction defects that resolve within days to weeks.

- The July 2015 vestibular neurology evaluation documented Ms. Moseley as denying any prior history of erythema migraine rash.

- While arthralgia and myalgia were described, no joint swelling was reported by Ms. Moseley or documented by her physicians.

- Ms. Moseley's September 30, 2020 primary care visit to Dr. Curtis specified the absence of joint pain, joint swelling, joint tenderness or joint stiffness, and the exam described Ms. Moseley's musculoskeletal system as within normal limits.

> ☐ Ms. Moseley's September 10, 2021 visit to the Jemsek Specialty Clinic noted the absence of arthropathy with no pain on light compression of the joints.

- Although exams from the Jemsek Specialty Clinic at times noted head-neck neuro-irritability, petosis and nasolabial flattening, no other healthcare providers, including neurology or otolaryngology noted these findings or any other findings suggestive of a facial palsy, meningitis or cranial neuritis.  (IX, pp. 3983-3989).

45.     Unum Life issued its decision on the appeal on June 1, 2022, upholding the prior determination that Ms. Moseley's disability was caused by her mental health conditions. (X, pp. 4033-4044).

**RESPONSE. Disputed.**  Many courts have criticized Dr. Norris's opinions as biased and unreliable. See footnote 2 in Ms. Moseley's memorandum in opposition. No information is in the file that demonstrates that Dr. Norris has any experience diagnosing Lyme disease. Unum's claim file does not explain how Dr. Norris' experience complies with 29 C.F.R. § 2560.503-1(h)(3)(iii).

Elizabeth Belanger, M.D., does not hold a clinical practice medical license, only one that lets her do things such as "deny financial payments. Under Rule Oregon Administrative Rules of the Oregon Medical Board, 847-008-0037(2), provides "A physician…with an Administrative Medicine license may not examine, care for or treat patients…" but "may advise organizations, both public and private, on healthcare matters; authorize and deny financial payments for care…" Unum's claim file does not explain how Dr. Belanger's experience complies with 29 C.F.R. § 2560.503-1(h)(3)(iii).

Dr. Jemsek diagnosed Ms. Moseley with Lyme disease. (AR0370-71; AR665-94). The ALJ rejected concluded Lyme disease was the cause of the occupational deficits.

(AR2591). The ALJ determined that Ms. Moseley experienced many physically disabling conditions due to Lyme disease. (AR2586-2592).

Respectfully submitted,

**SUSAN J. MOSELEY,**

DATED:  February 27, 2023            */s/ Jonathan M. Feigenbaum, Esq.*
Jonathan M. Feigenbaum, Esq. (#546686)
184 High Street, Suite 503
Boston, MA 02110
(617) 357-0700
jonathan@erisaattorneys.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

DATED:  February 27, 2023         By: */s/ Jonathan M. Feigenbaum*
Jonathan M. Feigenbaum